**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

HIRAM LOPEZ, #20357-055                    *

Plaintiff                                  *

v                                          *         Civil Action No. RDB-15-2747

WARDEN TIMOTHY S. STEWART               *
LT. MARK LATHROP
                                           *
Defendants
                                          ***

**MEMORANDUM OPINION**

Self-represented Plaintiff Hiram Lopez, a federal prisoner currently confined at the Federal Correctional Institution in Memphis, Tennessee, is suing Defendants in their official and personal capacities, seeking money damages and alleging they failed to provide him constitutionally adequate protection from violence while he was housed at Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland").[1]   (ECF 1, 15, 16). Defendants Timothy Stewart, Warden at FCI-Cumberland, and FCI-Cumberland Special Investigative Services ("SIS") Lieutenant Mark Lathrop,[2] by their counsel, have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF 20) and verified exhibits and declarations. Consonant with the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Lopez was notified Defendants' Motion will be treated as a Motion for Summary Judgment and he was entitled to file an opposition with materials in support. (ECF 23). Lopez filed an opposition to the Motion for Summary Judgment (ECF 29), and Defendants have filed an Reply (ECF 30) to

---

[1] Lopez used forms for filing a civil rights action pursuant to 42 U.S.C. § 1983.  Because Defendants were acting under color of federal law, Lopez's claims are not actionable under § 1983, but instead are examined under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*  403 U.S. 388, 395-97 (1971).

[2] Defendant Lathrop has not been served in his individual capacity.  Had service been obtained, Lathrop would be entitled to summary judgment, for reasons noted herein.

which Lopez filed a Surreply.[3]  (ECF No. 31).

The case is ripe for disposition. After considering the pleadings, exhibits, and applicable law, the Court now rules pursuant to Local Rule 105.6 (D. Md. 2014), as a hearing is deemed unnecessary. For reasons to follow, Defendants' Motion for Summary Judgment will be GRANTED.

## BACKGROUND

Lopez was housed at FCI-Cumberland between December 15, 2014 and October 30, 2015.[4]  He alleges that Defendants ignored his concerns about his safety in the general prison population and forced him out of the Special Housing Unit ("SHU"), resulting in injury.  He also alleges he lost good time credits and was issued a disciplinary report when he refused to leave the SHU.  He seeks $1,135,000.00 in damages, expungement of all disciplinary reports and reinstatement of lost good time occasioned by his refusal to leave the SHU, and abolition of the Bureau of Prison's ("BOP") protective custody verification policy.

Lopez states that on February 3, 2015, he was attacked by one of his co-defendants, Justin Augus, "after I refused to check in SHU."[5]  (ECF No. 1 at p. 3).  As a result of the altercation, both Lopez and Augus were sent to the SHU.  After release from the SHU, Lopez returned to general population where on March 23, 2015, "New York inmates accosted me with

---

[3] Surreply memoranda are not permitted to be filed absent Court order.  *See* Local Rule 105.2(a) (D. Md. 2014).  "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd,* 85 F. App'x 960 (4th Cir. 2004), citing  *Lewis v. Rumsfeld,* 154 F.Supp.2d 56, 61 (D.D.C.2001).  Where, as here, the proposed surreply is simply a rehash of what has already been presented in previously filed responsive pleadings, leave to file a surreply is appropriately denied.

[4] Lopez is serving 87 months' incarceration following his October 23, 2014 conviction for conspiracy to commit racketeering imposed by the United States District Court for the Western District of New York. *See United States v. Lopez,* Crim. No. 1:09-CR-331-024 (W.D. N.Y.).   In correspondence with the BOP regional office, he indicated his criminal case involved 43 co-defendants from New York.  (ECF 1-1 at p. 4).

[5] It is unclear from this statement whether Lopez refused a staff request or his co-defendant's suggestion that he be housed in the SHU.  The statement does suggest that Lopez had knowledge that Augus was housed at FCI-Cumberland prior to the February 3, 2015 incident.

demands for me to checkin [to the SHU]and when I tried to explain SIS orders…"Blaze" punched me in the face." (ECF 1 at pp. 3-4). Although SIS claimed "they received information that it would be ok" for Lopez to return to general population, he was again "threatened, and returned to the SHU."

### A. Defendants' Response

In support of the Motion for Summary Judgment, Defendants have filed copies of prison records and regulations and the declaration of Defendant Lathrop. They indicate that on February 3, 2015, six weeks after his arrival at FCI-Cumberland, Lopez was found to have injuries consistent with a physical altercation. (ECF 20-5, Incident Report CUM-15-0023, at p. 2). Recreation staff escorted Lopez to Lathrop's office[6] and while Lopez was there, reviewed the VICON camera system. Video showed that Lopez and another prisoner entered the bathroom in the gym at 12:40 p.m. Two minutes later, they left the restroom. Lopez's shirt was ripped and he appeared to have been in a fight. (*Id.* at pp. 2-3). The other prisoner was summoned to Lathrop's office and visually examined; he, too, showed signs of having been in a fight. Both men were taken to Health Services for assessment. (*Id.* at p. 3).

Lopez told Health Services staff the fight occurred because the other prisoner had "more time to serve than me, we are co-defendants." (ECF 20-6, Hamilton Decl., at ¶ 3; ECF 20-4, Medical Record. Lopez had sustained scratches, bleeding, redness and swelling, and bruising on the right temple and left upper chest. Treatment was provided. (*Id.*).

Lopez was placed in the SHU while SIS staff completed its investigation of the incident. He was found guilty through the prison disciplinary process of fighting on February 18, 2015. (ECF 20-9, Request for Transfer). SIS investigators found no threat to Lopez's safety in leaving

---

[6] Lathrop was head of FCI-Cumberland's Special Investigative Services ("SIS").

the SHU, and on June 5, 2015, Lopez was ordered to return to general population.  (ECF 20-2, Lathrop Decl. at ¶¶ 5-6).

On an unspecified date, Lopez told prison staff he had been punched in the back of the head by an unknown assailant.  (ECF 1 at ¶ 7).  He was placed in the SHU, and another SIS investigation was convened.  Lopez told staff a fellow prisoner he encountered in the dining area told him to go back to the SHU for his safety.  SIS staff reviewed footage of the dining hall and could not find Lopez in the area.  (ECF 20- 2, Lathrop Decl. at ¶ 8).  Because no threat was found, on June 5, 2015, Lopez was ordered to return to general population.  Lopez refused the order, and on June 11, 2015, was sanctioned with 90 days of lost commissary privileges for refusing to leave the SHU, based on his belief that he was unsafe.  (ECF 22-1 at p. 70).

On June 23, 2015, he again refused to leave the SHU due to concerns for his safety, and received 30 days of lost commissary privileges and 15 days loss of Trulincs.[7]  (*Id.* at p. 71).  He returned to general population on June 25, 2015.  (ECF 1 at p. 10).   On August 29, 2015, Defendant Stewart requested Lopez's transfer to another medium security prison, due to poor adjustment.  The transfer occurred on October 30, 2015.  (ECF 20-9).

### B.  Plaintiff's Opposition[8]

Lopez states that when designated to FCI-Cumberland on December 15, 2014, he informed SIS personnel that he had been a cooperator.  (ECF 1; ECF 29, Reply Mem. at p. 2).  He indicated that SIS knew Lopez's co-defendant previously was housed at FCI-Cumberland, and transferred the co-defendant a month before Lopez's arrival.  (*Id.).*  Despite this knowledge,

---

[7] Trulincs (Trust Fund Limited Inmate Computer System) is the BOP's program allowing limited computer access to prisoners, who may use it to send and receive electronic messages without having access to the internet.  *See* https://www.google.com/?gws_rd=ssl#q=What+is+the+BOP+Trulincs+system

[8] Within the Opposition Response is Lopez's Motion to amend his Complaint to add unknown SIS staff.  (ECF No. 13 at 12-13).  The Motion is deficient under Fed. R. Civ. P. 15(a)(2), as it does not include a copy of Defendants' consent, nor does it demonstrate that justice requires such amendment.

prison personnel placed Lopez in general population, where one of his co-defendant's "friends from the NY Car[9]…on March 23rd" assaulted Lopez following his release from the SHU, while others threatened him with harm.[10]  (*Id.* at pp. 2-3).

Lopez also claims that in late April or early May of 2015, Lopez was threatened with transfer if he did not tell SIS investigators who assaulted him.  (*Id.* at p. 3).  Lopez identified his assailant, who was placed in the SHU in a cell next to Lopez.[11]  He complains that he was given "45 days" as a sanction for "fighting with his co-defendant" but the co-defendant received a lesser sanction of "14 days" and was released to general population at the same time as Lopez. (*Id.*  at pp. 4-5).  Lopez states that a disciplinary hearing officer later restored Lopez's good conduct credits on the basis that the fight occurred because SIS did not thoroughly investigate that the two men would be housed at the same institution.[12]  (*Id.* at pp. 5-6, 11-12).  Lopez provides case citation of Eighth and Fourteenth Amendment law and claims that SIS "failed to follow Bureau of Prisons ("BOP") policy by not investigation [his] situation properly or at all." (*Id.* at p. 15).

## C.  Defendants' Reply

Defendants reiterate their statements that Lopez was involved in one physical altercation in February of 2015, and suffered minor injuries which were immediately assessed and treated by medical personnel.  Lopez was placed in the SHU while SIS staff conducted an investigation

---

[9] The Court assumes the "NY Car" is a gang.

[10] Lopez states he "was also told to sign a keep away on an unknown person.  Officials refused to tell [him] who the keep away was for."  ECF 29 at p. 2.  Lopez offers this statement to show that FCI-Cumberland security personnel knew that he was at risk at the hands of fellow prisoners.

[11] Lopez indicates the assailant was not placed in the SHU for attacking him, but rather was punished for fighting with another prisoner.  (*Id.* at pp. 3-4).  The purpose for the placement is not material to the outcome of this case and need not be explored further.

[12] For that reason, Lopez's request for restoration of good conduct time and expungement of relevant institutional disciplinary reports has been rendered moot.

to identify potential ongoing threats to his safety.   No threats were found, and Lopez was instructed to return to general population.  When Lopez claimed multiple prisoners continued to threaten him, SIS personnel convened several investigations and found no viable threat to his safety.   Defendants have been unable to determine when the restoration of good conduct time was based on any findings involving the SIS investigation of Lopez's allegations of threats.

## DISCUSSION

Defendants seek summary judgment in their favor on several grounds: 1) they are not amenable to suit in their official capacities; 2) Stewart was not personally involved in the matters alleged and respondeat superior is not available in a *Bivens* action; 3) Lopez fails to establish requisite deliberate indifference to a known harm; and 4) qualified immunity.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' " *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Disputes of material fact are genuine if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In order to avoid summary judgment, the nonmoving party " 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)). While the Court must view the evidence in the light most favorable to the nonmoving party, *Francis v. Booz, Allen & Hamilton, Inc*., 452 F.3d 299, 302 (4th Cir. 2006), it must also "prevent factually unsupported claims and defenses from proceeding to trial," *Drewitt v. Pratt,*

999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted). Against this legal standard, the Court examines Defendants' defenses and arguments.

### A.  Sovereign Immunity

When an individual is sued in his official capacity, the suit is essentially against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (noting that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). Absent  waiver, sovereign immunity shields a governmental entity from suit. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).

"While *Bivens* actions allow for recovery of money damages against federal officials who violate the United States Constitution in their individual capacities, *Bivens* does not allow for recovery of money damages, or suits in general, against the government itself.... [T]he United States has not waived sovereign immunity in suits claiming constitutional torts ...." *Reinbold v. Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999); *see also Chiang v. Lappin*, RDB–07–1017, 2008 WL 2945434, at *5–6 (D. Md. July 24, 2008) (dismissing *Bivens* claims against defendants in their official capacities on sovereign immunity grounds).

Lopez provides no evidence sovereign immunity is waived. Thus, Defendants are entitled to summary judgment in their favor in regard to all claims against them in their official capacities.

### B.  Lack of Personal Involvement

Liability in a *Bivens* action is based on each defendant's personal constitutional violations, *Trulock v. Freeh*, 275 F.3d 391, 401 (4th Cir. 2001). In this case, Lopez claims that he send a "direct letter" to Stewart (ECF 29 at p. 12), and that Stewart had a responsibility to "check

up on SIS staff to make sure they were following BOP policy," then "intervene" to protect Lopez from harm.  (ECF 29 at p. 12).

The "direct letter" appears to be Lopez's Inmate Request to Staff, dated June 5, 2015, directed to Warden Stewart.  Lopez complains about receiving a "shot" (disciplinary sanctions) for refusing to leave the SHU following the March 23, 2015 incident, which he describes as a sucker punch that sent him to the floor, whereupon "a group of guys" huddled over him and threatened harm if he did not return to the SHU.  The Inmate Request also details Lopez's complaint concerning the thoroughness of the SIS investigation, claims that SIS personnel were placing bets on whether he would fight back or choose to return to the SHU, and alleges he is being treated in a discriminatory manner because he was from New York.   (ECF 1-1 at pp. 6-7). There is no indication at the bottom of the form that any staff member, including the Warden, received the Inmate Request.  (*Id.* at p. 6).  No evidence suggests that Defendant Stewart was aware of any decision concerning his placement on the SHU for purposes of protection.

### C.  Respondeat Superior

A *Bivens* action may not be premised upon a respondeat superior theory. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014)) ("[G]overnment officials cannot be held liable in a *Bivens* case under a theory of respondeat superior for the actions of their subordinates.") *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).   "In a ... *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Trulock*, 275 F.3d at 402 (4th Cir. 2001).

The record does not suggest grounds to establish supervisory liability. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (supervisory liability requires evidence of actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury, the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the practices; and, there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered).   Lopez propounds no allegations of documented practices to show either Stewart or Lathrop tacitly authorized  constitutionally offensive conduct of subordinates. Thus, neither can be held vicariously liable for the actions about which Lopez complains. Accordingly, they are entitled to summary judgment in their favor.

### D.  Deliberate Indifference

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials."   *Raynor v. Pugh*, __ F.3d __, 2016 WL1056091*2 (4th Cir. 2016), citing *Farmer* 511 U.S. at 825.   Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'"   *Id*.   "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victims safety."  *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015).  A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established.  *See Raynor* 2016 WL at *3.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk to either injury.  *Danser v. Stansberry*, 772 F.3d 340, 346 – 47 (4th Cir. 2014).  The objective inquiry requires this Court

to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment.  *Raynor*, 2016 WL at *5.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834.  Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn.  *Id.* at 837.  A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder my conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"  *Raynor*, 2016 WL at *3.

Actual knowledge of a substantial risk does not alone impose liability.  Where prison officials responded reasonably to a risk, they may be found free of liability.  *Farmer*, 511 U.S. at 844.  "In failure to protect cases, prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm."  *Raynor*, 2016 WL at *3 (internal quotation marks omitted), citing *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995).  Failure to take any action in an ongoing assault, however, can amount to deliberate indifference.  *See Winfield v. Bass*, 106 F.3d  525, 532 (4th Cir. 1997).

For the purpose of analysis, the Court will assume that Lopez's injuries from his two-minute fight with Justin Augus (bruises and scratches) qualify as "significant" injury under the

first element of the *Farmer* test.  Were this so, Lopez nonetheless fails to meet the second element for imposing liability: simply, there is no indication in the six weeks leading to the incident that Lopez expressed concern about being housed in general population with Augus, and no obvious reason for prison officials to keep the two apart.  Both men were sanctioned for the fight, and Lopez was housed in the SHU until June 5, 2015, when he was released based on the investigator's conclusion that no further harm existed.  Nothing suggests Defendants knew, or had any reason to know, that the two harbored animosity; thus, Lopez cannot meet the second *Farmer* element by showing Defendants' culpability.

Following this first incident, Lopez' claims of "harm" appear to be based on a punch to the back of the head and verbal threats by fellow prisoners, whom he describes as "friends" of one of his co-defendants who had been transferred from FCI-Cumberland prior to Lopez's arrival.  Assuming the first element of the *Farmer* test is met, the second element that forms the core question is more problematic; Lopez must show that Defendants had a "sufficiently culpable state of mind."  A prison official's subjective actual knowledge of a risk can be proven by circumstantial evidence.  *Makdessi,* 789 F.3d at 133.  Stated another way, "although the obviousness of a particular injury is not conclusive of an official's awareness of the injury, an injury might be so obvious that the factfinder could conclude that [a defendant] *did* know of it because he could not have failed to know of it."  *Brice v. Virginia Beach Corr. Ctr.,* 58 F.3d 101, 105 (4th Cir. 1995) (citations omitted) (emphasis in original).

Thus, a prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information

concerning the risk and thus 'must have known' about it." *Farmer,* 511 U.S. at 842 (quotation

marks omitted).  Direct evidence of actual knowledge is not required. *See id.* at 842–43, 114

S.Ct. 1970.

Unlike the prisoner-plaintiff in *Makdessi*, Lopez's concerns were investigated and no

evidence of harm was found.  Indeed, it does not appear that the incidents alleged after the fight

with Augus actually occurred.[13] Lopez disagreed with these findings, and remained in the SHU.[14]

There is simply no indication that Defendants had actual knowledge that Lopez was in particular

danger from his co-defendants, and no evidence that officers were deliberately indifferent to a

significant risk of harm.[15]

### CONCLUSION

In sum, Lopez does not establish that Defendants knew of and disregarded an excessive

risk to his safety in violation of his rights under the Eighth or Fourteenth Amendments.

Accordingly, even when the facts are viewed in the light most favorable to Lopez, there are no

genuine issues of material fact in dispute, and Defendants are entitled to summary judgment in

their favor as a matter of law.  A separate Order follow.


__June 14, 2016_____                    ___/s/_____
Date                                                              RICHARD D. BENNETT
                                                                   UNITED STATES DISTRICT JUDGE

---

[13] Lopez's request that the BOP's policy requiring verification of harm prior to a prisoner's placement on protective custody be abolished will not be examined here.

[14] It is unclear whether any good conduct time was taken as a result of Lopez's refusal to leave the SHU.  In any event, actual injury caused by a loss of good conduct time occasioned during his stay at FCI-Cumberland is not found in this record.

[15] Given this outcome, the Court need not address Defendants' qualified immunity argument.